UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| YR Union LLC, | |
| Plaintiff, | Case No. 1:24-cv-10276 |
| v. | Judge Sunil R. Harjani |
| Tushbaby, Inc., | Magistrate Judge Keri L. Holleb Hotaling |
| Defendant. | |

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT
AND INCORPORATED MEMORANDUM OF LAW**

Pursuant to Rule 12(b)(6) and Local Rule 7.1, Defendant Tushbaby, Inc. ("Tushbaby") moves to dismiss Plaintiff YR Union LLC's ("YR Union") Complaint. [ECF No. 1]. For the reasons stated in the incorporated memorandum of law, Tushbaby requests that the Court dismiss the Complaint in its entirety.

I.     BACKGROUND

Tushbaby is the owner and registrant of U.S. Registration No. 7,489,071, its distinctive trade dress, which was registered with the U.S. Patent and Trademark Office ("PTO") in Class 18 for "Pouch baby carriers; baby carriers worn on the body; baby carriers worn on the hip with storage for carrying babies' and parents' accessories" on August 27, 2024 (the "Tushbaby Trade Dress"). [ECF No. 1-2]; Compl. ¶ 13. According to the trademark registration, the mark consists of "a three-dimensional configuration of a pocket and a flap." [*Id.*]; Compl. ¶ 13.

YR Union seeks declaratory relief and damages for unfair competition. *See* Compl. ¶¶ 20 *et seq.* Specifically, it seeks a declaration that it has not infringed the Tushbaby Trade Dress (Count I), a declaration that the Tushbaby Trade Dress is invalid and should be cancelled by the PTO (Count II)

1

and relief under Illinois common law for unfair competition (Count III). *See id.* It asserts there is a proper "case or controversy" because its hip carrier was delisted by Amazon because of a notice from Tushbaby to Amazon. *See id.* at ¶¶ 16–17.

As explained below, the Court should dismiss the Complaint because YR Union fails to allege facts which, taken as true, would plausibly support any of its claims. For Counts II and III, YR Union cannot maintain those claims regardless of its allegations, and therefore those claims must be dismissed with prejudice.

## II. MEMORANDUM OF LAW

### A. Legal Standard

A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When considering dismissal of a complaint, the Court accepts well pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L. Ed. 2d 1081 (2007); *Trujillo v. Rockledge Furniture LLC*, 926 F.3d 395, 397 (7th Cir. 2019). A court, however, "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Alam v. Miller Brewing Co.*, 709 F.3d 662, 666 (7th Cir. 2013) (internal quotations marks omitted) (citation omitted). On a Rule 12(b)(6) motion, courts can properly consider "the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

### B. Request for Judicial Notice.

As a preliminary matter, Tushbaby requests that the Court take judicial notice of the Tushbaby Trade Dress application and supporting materials submitted to the U.S. Patent and Trademark Office

("PTO") (the "Trade Dress Application").[1]

YR Union's pleading seeks to cancel the Tushbaby Trade Dress registration (*see* Compl. Ex. B) by making repeated reference to alleged "misrepresentations" to the PTO. *See, e.g.,* Compl. ¶¶ 8, 45-47, 54. In doing so, YR Union puts Tushbaby's representations to the PTO—which are set forth in the Trade Dress Application—at front and center. Additionally, the Trade Dress Application is a "matter[] of 'public record'" which courts can consider "without converting a 12(b)(6) motion into a motion for summary judgment." *Patterson v. World Wrestling Entm't*, 2005 WL 8162784, at *2 n.4 (E.D. Wisc. Feb. 8, 2005); *see also Slep-Tone Ent. Corp. v. Kalamata, Inc.*, 75 F. Supp. 3d 898, 904 (N.D. Ill. 2014) (taking judicial notice of materials submitted to PTO). As explained below, YR Union challenges the validity of the Tushbaby Trade Dress by, among other things, characterizing what Tushbaby submitted to the PTO in support of its application. However, a court is "not bound to accept the pleader's allegations as to the effect of the exhibit, but can independently examine the document and form its own conclusions as to the proper construction and meaning to be given the material." *Sanchez v. Walmart Inc.*, 2024 WL 2132426, at *1 (N.D. Ill. May 13, 2024) (quoting *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002)). The Court need not accept YR Union's characterizations, which as set forth below, are plainly contradicted by the PTO record.

**C. The Complaint Should be Dismissed as an Impermissible Shotgun Pleading.**

As a threshold matter, YR Union's Complaint violates the cardinal rules of pleading. In paragraphs 20, 26, and 52, YR Union incorporates each and every prior paragraph into its successive counts, rendering it practically impossible for Tushbaby to adequately respond to each count. "Courts have discouraged this type of 'shotgun' pleading where each count incorporate[s] by reference all

---

[1] The Trade Dress Application is attached as Exhibit A to the Declaration of Allison Corder submitted herewith ("Corder Decl."). It is also publicly available on the PTO online database at the following URL:
https://tsdr.uspto.gov/documentviewer?caseId=sn98310767&docId=APP20231213153227&linkId=20#docIndex=19&page=1.

3

preceding paragraphs and counts of the complaint notwithstanding that many of the facts alleged are not material to the claim, or cause of action, appearing in a count's heading. Such pleadings make it virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Chriswell v. Vill. of Oak Lawn*, 2013 WL 5903417, at *5 (N.D. Ill. Nov. 4, 2013), *aff'd sub nom. Chriswell v. O'Brien*, 570 F. App'x 617 (7th Cir. 2014) (citation omitted; alterations in original).

By way of example, Count III asserts an unlawful competition claim based on the "unlawful acts as set forth above," Compl. ¶ 53, yet it incorporates every prior allegation and count, failing to specify precisely *which* of the preceding fifty-two paragraphs apply. The Complaint can, and should, be dismissed for this reason alone.

Setting aside this global deficiency, the Complaint should be dismissed because YR Union fails to plead facts which are sufficient to plausibly support each Count.

### D. Count I Fails to State a Claim for Non-Infringement

Under Count I, Compl. at ¶¶ 20–25, YR Union alleges that there cannot be likelihood of confusion between its product design and the Tushbaby Trade Dress. But even taken as true, the allegations simply do not plausibly lead to a finding of non-infringement.

The crux of YR Union's Count I is that its product does not infringe because of some allegedly minor visual differences, seemingly asking the court to juxtapose the Tushbaby Trade Dress registration drawing with a screenshot of its own product. Compl. ¶¶ 13, 23. But even taken as true, such allegations are not sufficient to support a finding of non-infringement. This is because trade dress infringement is not compared or evaluated simply by looking at two designs side-by-side and asking the fact-finder to spot the differences. To the contrary, the Seventh Circuit employs a multi-factor test of which the similarity of the marks is merely one factor.[2]

---

[2] The other factors are the similarity of the products; the area and manner of concurrent use; the degree of care consumers are likely to use; the strength of plaintiff's mark; actual consumer confusion; and the defendant's intent to 'palm off' its product as that of another. *Sorensen v. WD-40*

4

And on this factor—the sole factor implicated by YR Union's pleading—the comparison is flawed because courts consider "what happens in the marketplace, not merely by looking at the two marks side-by-side." *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 897 (7th Cir. 2001). Indeed, confusion in the marketplace "takes various forms, including 'initial interest' confusion, 'source' or 'associational' confusion, and 'post-sale confusion.'" *Wolf Appliance, Inc. v. Viking Range Corp.*, 686 F. Supp. 2d 878, 889 (W.D. Wis. 2010). For example, associational confusion occurs when the similarity of the trade dress leads consumers to believe there is an association between the two products, *see Computer Care v. Service Systems Enterprises, Inc.*, 982 F.2d 1063, 1070 (7th Cir.1992); initial interest confusion occurs when a customer is lured to a product by the similarity of the mark even if the customer learns the true source of the goods before sale, *see Promatek Industries, Ltd. v. Equitrac Corp.*, 300 F.3d 808, 812 (7th Cir. 2002); and post-sale confusion occurs "when the actual purchaser knows that the item originates with the infringer rather than the owner, but subsequent observers likely will confuse the source of the goods due to the confusing similarities." *Sara Lee Corp. v. Am. Leather Prods.*, 1998 WL 433764, at *17 (N.D. Ill. July 27, 1998) (citing *Academy of Mot. Pic. Arts and Sciences v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1455 (9th Cir. 1991)); MCCARTHY ON TRADEMARKS, § 23.01[4][c] (noting that post-sale confusion is actionable because a senior user is damaged by consumers acquiring the prestige value of the senior user's product by "buying the copier's cheap imitation").[3] Because YR Union does not identify the relevant marketplaces, or even allege how *any* other factor favors it, YR has failed to state a claim.

### E. Count II Fails to State a Claim for Declaration of Invalidity and Cancellation.

---

*Co.*, 792 F.3d 712, 726 (7th Cir. 2015). No one factor is dispositive. *Fortres Grand Corp. v. Warner Bros. Entm't Inc.*, 763 F.3d 696, 704 (7th Cir. 2014).

[3] Tellingly, YR Union does not (because it cannot) allege to be the senior user. This is because Tushbaby has used the Tushbaby Trade Dress in commerce since 2018, Compl., Ex. B, over six years before YR Union allegedly claims to have received Tushbaby's infringement complaint. *Id.* ¶ 11.

Under Count II, Compl. ¶¶ 26-51, YR Union alleges that the Tushbaby Trade Dress is invalid and should be cancelled on three bases: functionality, lack of secondary meaning, and fraud.[4] At the outset, this is premature without an already ongoing action involving a registered mark. *See RLP Ventures, LLC v. All Hands Instruction NFP*, 2020 WL 1330376, at *5 (N.D. Ill. Mar. 23, 2020) (dismissing cancellation claim for lack of subject matter jurisdiction). But even if the Court were to consider this claim, YR Union's Complaint offers little besides bare conclusions and allegations which, if not otherwise contradicted on their face by the Trade Dress Application, fail to plausibly rebut the presumption of validity to which the Tushbaby Trade Dress is entitled. *See Publications, Int'l, Ltd. v. Landoll, Inc.*, 164 F.3d 337, 340 (7th Cir. 1998) ("[R]egistration creates a presumption of validity, implying that the [non-infringer] has the laboring oar on all issues relating to validity, including functionality . . . ."). Each basis is addressed in turn.

**<u>Functionality</u>**

While functionality is a factual question, it can often be decided as a matter of law. *Arlington Specialties, Inc. v. Urb. Aid, Inc.*, 847 F.3d 415, 419–20 (7th Cir. 2017) (citations omitted). The critical question courts ask when considering whether a design is functional and thus ineligible for trademark protection is whether the design "is *essential* to the use or purpose of the article or if it affects the cost or quality of the article." *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 850 n.10, (1982) (emphasis added). The Seventh Circuit has often employed the following factors, with no one factor being dispositive:

> (1) the existence of a utility patent, expired or unexpired, that involves or describes the functionality of an item's design element; (2) the utilitarian properties of the item's unpatented design elements; (3) advertising of the item that touts the utilitarian advantages of the item's design elements; (4) the dearth of, or difficulty in creating, alternative designs for the item's purpose; (5) the effect of the design feature on an item's quality or cost."

---

[4] While not specified, YR Union seemingly invokes 15 U.S.C. § 1119, which grants courts the power to "order the cancellation of registrations." *See also Republic Techs. (NA), LLC v. BBK Tobacco & Foods, LLC*, 262 F. Supp. 3d 605, 607 (N.D. Ill. 2017).

*Flexible Steel Lacing*, 955 F.3d at 644.

Stripping out the bare conclusions, *see McLeod v. Arrow Marine Transp., Inc.*, 258 F.3d 608, 614 (7th Cir. 2001), YR Union's functionality allegation essentially boils down to this: the Tushbaby Trade Dress is functional because it "provide[s] additional storage space"; its "shape, size and thickness are more or less shaped in order to be suitable for front design of the product"; its "positioning and size of the baby hip seat carrier product is within narrow parameters for compatibility with the product to provide maximum storage space"; the Tushbaby Trade Dress "consists of patentable features" which YR Union does not identify; and "upon information and belief," Tushbaby's marketing materials "emphasize the utilitarian benefits of pocket." Compl. ¶ 32, 34, 36. But this does not overcome the presumption of nonfunctionality.

First, even taking all of these allegations as true, YR Union still fails to explain why the Tushbaby Trade Dress is ***essential*** to the ***function*** of a baby carrier—which is, of course, to carry a baby. To the contrary, YR Union's allegations, at most, establish that the Tushbaby Trade Dress is useful. But that is not the proper inquiry. *See Bodum USA, Inc. v. A Top New Casting Inc.*, 927 F.3d 486, 492 (7th Cir. 2019) ("[Defendant] consistently elides the distinction between a product's 'function' in the everyday meaning of the term and 'functional' as a term of art used in trade dress law.").

*Bodum*, which is binding on this Court, is instructive. While there is no question that a handle, cylindrical carafe, and plunger, all serve important functions for a French press coffee maker, the Seventh Circuit nonetheless rejected defendant's challenges to plaintiff's trade dress featuring these items. 927 F.3d at 498. This is because the trade dress owner "did not have to prove that something like a handle does not serve any function. It merely needed to prove that preventing competitors from copying [its] particular design would not significantly disadvantage them from producing a competitive and cost-effective French press coffeemaker." *Id.*

Similarly here, YR Union's allegations attack the Tushbaby hip carrier's pocket as functional, but "a product whose overall appearance is distinctive can be protected under trademark laws, even though most of the product's constituent elements serve some function." *Specialized Seating, Inc. v. Greenwich Indus., LP*, 616 F.3d 722, 727 (7th Cir. 2010) (citing *W.T. Rogers Co. v. Keene,* 778 F.2d 334, 339–40 (7th Cir.1985) & *Service Ideas, Inc. v. Traex Corp.*, 846 F.2d 1118, 1123 (7th Cir. 1988)); *see also Publications Int'l, Ltd. v. Landoll, Inc.*, 164 F.3d 337, 342 (7th Cir. 1998) ("[i]f the product nevertheless presented a distinctive appearance, that appearance would be eligible for legal protection as trade dress unless it was the only way the product *could* look, consistent with its performing each of the product's functions optimally") (emphasis in original).[5]

Second, YR Union's empty allegations concerning trade dress features purportedly being subject to utility patents, and marketing materials which "on information and belief" contain statements emphasizing the "utilitarian benefits" of the pocket, Compl. ¶¶ 34, 36, do nothing to move the needle for YR Union's claim. Setting aside YR Union's failure to point to a single utility patent or marketing material in its pleading that would purportedly undermine the nonfunctionality of the Tushbaby Trade Dress, YR Union's allegations ignore that these things are not dispositive. *See Bodum*, 927 F.3d at 493, 496 (explaining that advertising which touted function did not relate to functionality in the legal sense, and excluding utility patents from evidence because they did not "claim the trade dress features in some 'significant way'").

Third, after YR Union initiated this case, the Southern District of New York granted Tushbaby's motion for a preliminary injunction in a case against a number of other infringers

---

[5] As discussed *infra*, YR Union later alleges that Tushbaby represented to the PTO "that there are alternative product designs to competitors, which is also knowingly false." Compl. ¶ 47. Not only is this an outright fabrication of the registration record, but one court has already expressly rejected this very claim, brought by parties represented by the same firm as YR Union. *See* Corder Ex. A, at 8-40, 78-83; *Tushbaby, Inc. v. Jinjang Kangbersi Trade Co*, 2024 WL 4627452, at *5 (S.D.N.Y. Oct. 30, 2024) ("[A]s Tushbaby rightly observes, the nonfunctionality of its trade dress as a whole is 'demonstrated by the numerous other designs in the market.")

8

represented by the same firm representing YR Union. *Tushbaby, Inc. v. Jinjang Kangbersi Trade Co.*, 2024 WL 4627452 (S.D.N.Y. Oct. 30, 2024), *reconsideration denied*, 2024 WL 4769686 (S.D.N.Y. Nov. 13, 2024). Faced with the exact same Trade Dress Application materials that are on the pleadings record here, the court rejected every single functionality challenge to the Tushbaby Trade Dress, which were based on the same allegations at issue here. The court explained that defendants' position that the pocket features were functional "conflate[d] the ordinary meaning of the term 'functional' with the meaning of the term in the trade dress context. The Tushbaby carrier's pocket features are obviously useful, providing users with storage space for various items and accessories. But that does not mean that these design features, viewed in the aggregate, are essential to effective competition in the baby carrier market." *Tushbaby*, 2024 WL 4627452, at *5 (because the Tushbaby Trade Dress extended to the 'overall look' of the combination of features comprising a product or product line, the Court must evaluate the distinctiveness and functionality of those features taken together, not in isolation.'"); *see also Bodum*, 927 F.3d at 492 (citing *Comput. Care v. Serv. Sys. Enters., Inc.*, 982 F.2d 1063, 1071 (7th Cir. 1992) (where registrant seeks to protect overall appearance of its trade dress, focus of analysis is on that total appearance rather than individual design elements in isolation)). Illustrating this point, the Southern District of New York noted, not once, but twice, that Tushbaby, through the Trade Dress Application materials, that "the nonfunctionality of its trade dress as a whole is demonstrated by the numerous other designs in the market," confirming that, while the features may be useful, they are not "essential to the use and purposes of a baby carrier." 2024 WL 4769686, at *5; 2024 WL 4627452, at *1.

At bottom, YR Union's allegations, even taken as true, are built on the assumption that, because a pocket serves *some* type of function which is useful, that *Tushbaby's* particular pocket design is necessarily functional as a matter of law. This is incorrect.

9

**Secondary Meaning**

YR Union also asserts that the Tushbaby Trade Dress does not confer trade dress rights because it lacks secondary meaning, Compl. ¶¶ 38–44, *i.e.,* that the product design acts as a source identifier. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 766, n.4 (1992). *Arlington Specialties, Inc. v. Urban Aid, Inc.*, 847 F.3d 415, 418 (7th Cir. 2017). Given that the Tushbaby Trade Dress is registered, Tushbaby is entitled to a presumption that the Trade Dress has already acquired secondary meaning. *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 209 (2000); 15 U.S.C. § 1057(b).

YR Union's challenges as to lack of secondary meaning fail because they consist of conclusory allegations, primarily made under information and belief, and which are largely contradicted by the Trade Dress Application. The PTO clearly believed that Tushbaby had obtained secondary meaning by granting its registration, 15 U.S.C. § 1057(b), and YR Union's allegations do not plausibly rise to a level that would justify overturning those findings. For example, YR Union alleges "upon information and belief" that Defendant has "never had any 'look for' advertising for its Tushbaby Trade Dress and there is no evidence can [sic] indicate that consumers associate the asserted Tushbaby Trade Dress with a particular source," Compl. ¶ 42; and further alleges that "the design claimed in the Tushbaby Trade Dress is merely a common product configuration. There are many third parties using the similar design for the pockets." *Id.* ¶ 43. But YR Union provides no "grounds for [its] suspicions" whatsoever, as is required in this Circuit to plead on information and belief. *See Robinson v. Pfister*, 2019 WL 4305527, at *7 (N.D. Ill. Sept. 11, 2019) (citing *U.S. ex rel. hanna v. City of Chicago*, 834 F.3d 775, 780 (7th Cir. 2016)).

Quite to the contrary, YR Union's "information and belief" allegations are plainly contradicted by the evidence submitted as part of the Trade Dress Application, which speaks for itself. As evidenced by the materials submitted to the PTO, Tushbaby provided ample evidence of the

acquired distinctiveness it achieved through five years of use and substantial consumer recognition, including, among other things, unsolicited and solicited press on a massive scale, millions of dollars of spending per year on advertising, and tens of millions of dollars in sales. Corder Ex. A, at 42-241. The PTO plainly believed that this was sufficient evidence of secondary meaning to register the Tushbaby Trade Dress on the principal register. And the Southern District of New York confirmed that this belief was reasonable when it held that Tushbaby had not only established that its trade dress held secondary meaning, but that it was "conceptually and commercially strong." *Tushbaby*, 2024 WL 4627452, at *6.

## Fraud

Finally, YR Union alleges that Tushbaby obtained its Tushbaby Trade Dress registration fraudulently, "through knowing misrepresentations to the PTO, with intent to deceive." Compl. ¶¶ 45–51. Obtaining a trademark registration by supplying the USPTO with fraudulent statements is a basis for canceling the registration. *See, e.g.*, *In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009) ("A third party may petition to cancel a registered trademark on the ground that the registration was obtained fraudulently.") (quotation marks omitted). As an initial matter, while YR Union purports that Tushbaby made material misrepresentations to the PTO, it cannot identify any, because the entire premise underlying YR Union's fraud theory—that the Tushbaby Trade Dress is functional—has been debunked, as discussed above. But even setting that aside, YR Union's allegation that Tushbaby committed fraud with respect to the functionality of the trade dress is an unworkable premise, because functionality "is not a material fact per se which can be withheld from the PTO. Rather, it is a traditional affirmative defense to an action for trademark infringement on which the defendant bears the burden of proof." *Northwestern Corp. v. Gabriel Mfg. Co.*, 1996 WL 251433, at *5 (N.D. Ill. May 8, 1996). In other words, functionality is not some fact that Tushbaby could have withheld from the PTO, "but rather, a determination the examiner must make when evaluating the mark for registration."

*Solo Cup Operating Corp. v. Lollicup USA, Inc.*, 2017 WL 3581182, at *3 (N.D. Ill. Aug. 18, 2017).

Even if YR Union could point to material misrepresentations as to functionality (and it cannot for all the reasons discussed), its fraud allegations are still wholly deficient. Fraud, even for trademark cancellation, must conform to the Rule 9(b) heightened pleading standards. *Republic Techs. (NA), LLC v. BBK Tobacco & Foods, LLC*, 262 F. Supp. 3d 605, 608–09 (N.D. Ill. 2017) (citing *Am. Cruise Lines, Inc. v. HMS Am. Queen Steamboat Co. LLC*, 223 F.Supp.3d 207, 214 (D. Del. 2016)). Accordingly, YR Union must plead facts *with particularity* that, if true, would "show by clear and convincing evidence that [Tushbaby] made a deliberate attempt to mislead the PTO into registering [its] mark by presenting materially false and misleading information to the PTO" when seeking its registration. *Specialized Seating, Inc. v. Greenwich Indus., L.P.*, 472 F. Supp. 2d 999, 1016 (N.D. Ill. 2007), *aff'd sub nom. Specialized Seating, Inc. v. Greenwich Indus., LP*, 616 F.3d 722 (7th Cir. 2010) (collecting cases); *see also Thomas Indus., Inc. v. L.E. Mason Co.*, 1991 WL 83821, at *2 (N.D.Ill. May 12, 1991) (A claim for fraudulent procurement of a trademark requires " '(1) [a] false representation regarding a material fact; (2) the registrant's knowledge or belief that the representation is false (scienter); (3) the intention to induce action or refraining from action in reliance on the misrepresentation; (4) reasonable reliance on the misrepresentation; and (5) damages proximately resulting from such reliance.'").

Here, YR Union offers nothing more than legal conclusions, which wholly fail to explain the "who, what, when, where, and how of the fraud." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 731, 737 (7th Cir. 2014). "Mere legal conclusions that a design is functional are insufficient, particularly when it is the basis for a claim of fraud which must be pled with particularity under Fed.R.Civ.P. 9(b)." *Northwestern Corp.*, 1996 WL 251433, at *6 (dismissing fraud on the PTO claim premised on functionality where defendants provided "no allegations concerning specific advantages in [plaintiff's] design or how these advantages will adversely impact their ability to

12

compete . . . "). YR Union does not even allege facts going to Tushbaby's purportedly deliberate intent to mislead the PTO, as is required to prove fraud. *See Money Store v. Harriscorp. Fin., Inc.*, 689 F.2d 666, 670 (7th Cir. 1982). Indeed, YR Union's sole fact allegation, which states in conclusory fashion that Defendant "also alleged that there are alternative product designs to competitors, which is also knowingly false," not only does not plausibly support a claim for fraud, *id.*, but it is outright contradicted by the Trade Dress Application, which did not just "allege" the existence of alternative product designs, it proved it. Corder Ex. A, at 8-40, 78-83; *Tushbaby,* 2024 WL 4627452, at *5 ("[A]s Tushbaby rightly observes, the nonfunctionality of its trade dress as a whole is 'demonstrated by the numerous other designs in the market.'"); *Tushbaby*, 2024 WL 4769686, at *2 (denying reconsideration and noting, "ignoring the many other carrier designs on the market, [defendant] asserts without support that 'protection of the round pouch apparently places enormous burden on all the rest [of the] competitors.' At bottom, these are arguments that the Court addressed and rejected.").

\* \* \*

Because there are "no set of facts consistent with the pleadings under which the plaintiff could obtain relief," *McMillan v. Collection Professionals, Inc.*, 455 F.3d 754, 759 (7th Cir. 2006), Count II should be dismissed with prejudice.

### F. Count III for Illinois Unfair Competition Fails to State a Claim.

Count III, which asserts that Tushbaby's alleged conduct constitutes common law unfair competition under Illinois law, should similarly be dismissed for several reasons. As a threshold matter, Count III is premised on Tushbaby's alleged "fraud," which, as discussed above is a nonstarter. *See* Compl. ¶ 54. And the balance of the allegations, made on "information and belief," are legal conclusions, which cannot be sustained. *Id.* at ¶ 55.

But most importantly, the alleged conduct is simply not actionable in Illinois as a matter of law. "Under Illinois law, the 'principal form of the tort of unfair competition 'falls under the rubric

13

of tortious interference with prospective economic advantage." *Holbrook Mfg LLC v. Rhyno Mfg. Inc.*, 497 F. Supp. 3d 319, 341 (N.D. Ill. 2020) (citations omitted). Accordingly, in order to plausibly allege unfair competition, "Illinois courts require a plaintiff to plead and prove every element of a claim for tortious interference with prospective economic advantage." *Id.* This requires alleging "(1) a reasonable expectancy of entering into a valid business relationship, (2) the defendant's knowledge of the expectancy, (3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy, and (4) damages to the plaintiff resulting from the defendant's interference." *Foster v. Principal Life Ins. Co.*, 806 F.3d 967, 971 (7th Cir. 2015). Finally, the defendant is entitled to the protection of the privilege of competition where it "has not employed wrongful means." *Holbrook*, 497 F Supp. at 341.

YR Union does not—because it cannot—plead facts to support any of these factors. At most, YR Union has demonstrated that Tushbaby has taken efforts to protect its intellectual property. That is no basis for unfair competition. *See Heinz v. Frank Lloyd Wright Foundation*, 762 F.Supp. 804, 808 (N.D.Ill. 1991) (no likelihood of success as to unfair competition claim where "there is no evidence to suggest that [defendant's] actions are anything more than good faith efforts to protect their trademark"). Accordingly, Count III should be dismissed with prejudice.

### III. CONCLUSION

For all these reasons, the Court should grant Tushbaby's motion to dismiss YR Union's Complaint in its entirety and Counts II and III with prejudice.

November 15, 2024

/s/ Allison M. Corder

Allison M. Corder
REDROC IP LLC
150 S. Wacker Drive, Suite 1650
Chicago, Illinois 60606
allison@redrocip.com
(847) 508-2554

Leo Lichtman

14

                                ESCA Legal LLC
Americas Tower
1177 6th Avenue, 5th Floor
New York, NY 10036
leo@esca.legal
(917) 397-1384
Attorneys for Defendant
Tushbaby Inc.

## CERTIFICATE OF SERVICE

The undersigned certifies that on November 15, 2024, we caused the foregoing document to be filed electronically with the Clerk of the Court via CM/ECF, which will notify all parties in this matter who are registered with the Court's CM/ECF filing system of such filing.

<u>/s/ Allison M. Corder</u>