UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| YR Union LLC, <br><br> *Plaintiff*, <br><br> v. <br><br> Tushbaby, Inc., <br><br> *Defendant*. | **CASE NO.** 24-10276 <br><br> **Jury Demand** |

**AMENDED COMPLAINT**

This is an action brought under the Declaratory Judgment Act by Plaintiff YR Union LLC ("Plaintiff" or "YR Union"), against Defendant Tushbaby, Inc ("Defendant" or "Tushbaby"). Upon actual knowledge with respect to itself and its acts, and upon information and belief as to all other matters, Plaintiff alleges as follows:

**NATURE OF THE ACTION**

1. This is an action for declaratory judgment seeking relief under the Federal Declaratory Judgment Act, 28 U.S.C.§§ 2201 and 2202, and Federal Rule of Civil Procedure 57, that Plaintiff has not infringed any alleged right of Defendant's trade dress U.S. Registration No. 7,489,071 (the "Tushbaby Trade Dress" or "071 Registration"), directly, contributorily, or vicariously, and the Tushbaby Trade Dress is invalid.

2. A case or controversy exists under the Federal Declaratory Judgment Act because Defendant has submitted an infringement complaint against Plaintiff's Baby Hip Seat Carrier products ("Accused Product") to Amazon causing Plaintiff's listing was delisted by Amazon.

///

1

## THE PARTIES

3. Plaintiff, YR Union LLC, is a Limited Liability Company located at 2310 PARKLAKE DR NE STE 477, UNIT G21, ATLANTA, GA 30345.

4. Upon information and belief, Defendant Tushbaby, Inc is a corporation incorporated under the laws of California with its principal address at 1990 N. California Blvd, 8th Floor, Walnut Creek, CA 94596.

## JURISDICTION AND VENUE

5. This Court has exclusive subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202, and the Trademark Law of the United States.

6. An actual case or controversy exists between the parties to this action. Defendant has submitted an infringement complaint against Plaintiff to Amazon causing Plaintiff's listing was delisted by Amazon. The Circumstances show that there is a substantial controversy between Plaintiff and Defendant.

7. Venue is proper in this Court pursuant to 28 U.S.C.§ 1391, and this Court may properly exercise personal jurisdiction over Defendant since the Defendant directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive, e-commerce Amazon store and their own website <https:/www.tushbaby.com/>. Specifically, Defendant has targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offers shipping to the United States, including Illinois, accepts payment in U.S. dollar and, on information and belief, has sold products to residents of Illinois. Defendant is engaging in interstate commerce and has wrongfully accused Plaintiff of infringement in the United States, including Illinois.

Defendant's act has caused and continues to cause significant harm to Plaintiff's business and also impact Plaintiff's sales in this District.

## FACTTUAL BACKGROUND

8. Plaintiff sells the baby hip seat carrier, baby bottle warmer and many other kinds of products on Amazon, using the storefront name YR Union.

9. Plaintiff's products are popular and well-established on Amazon platform. Plaintiff has earned a rating of 4.9 out of 5 stars in the last twelve months.

10. Upon information and belief, Defendant is in the business of selling the baby hip seat carrier products.

11. On October 12, 2024, Plaintiff received a notification from Amazon. *See* Exhibit A. This notification informed Plaintiff that the Accused Product (ASIN: B0C5RGTHJ2) is at risk of being removed due to a violation of Amazon's policies, because Amazon received an infringement complaint from Defendant for the Tushbaby Trade Dress. *Id*.

12. The Accused Product has already been removed by Amazon without any further notice.

13. The Tushbaby Trade Dress was registered on August 27, 2024. *See* Exhibit B. The certificate of the alleged Tushbaby Trade Dress shows the mark consists of a three-dimensional configuration of a pocket and a flap, as shown below.



3

14. However, the Accused Product is dissimilar to Tushbaby Trade Dress and is implausible to cause any confusion to consumers.

15. Defendant's acts as set forth herein were willful, deliberate, and intentional and were intended to damage Plaintiff and its business and to stifle competition.

16. The Amazon marketplace constitutes Plaintiffs' primary sales channel into the United States. To remain competitive in the United States market for Accused Product, Plaintiff needs its products listed in the Amazon marketplace. Amazon has removed the Accused Product from the marketplace, preventing Plaintiff from accessing its largest channel of trade because of Defendant's infringement complaint. Thus, Defendant's submission of Amazon infringement complaint has caused and continues to cause immediate and irreparable harm to Plaintiff.

17. Moreover, Amazon might also entirely suspend Plaintiff's Amazon seller account and dispose Plaintiff's inventory without any notice, which would destroy Plaintiff's business and deprive Plaintiff of the right to sell many other non-accused products to United States customers. *See* Exhibit A.

18. Defendant's acts as set forth herein have caused, and unless restrained by the Court, will continue to cause sales of the Accused Product to be lost and/or diverted to Defendant.

19. By removing Plaintiff's Accused Products from Amazon, Defendant is thereby unjustly enriching itself at the expense of, and to the damage and injury of Plaintiff in an amount to be determined at trial, including but not limited to lost sales of its Accused Products. Furthermore, Defendant has irreparably harmed Plaintiff and caused Plaintiff to suffer a substantial loss of goodwill and reputation, and such harm will continue unless Defendant is enjoined by this Court.

///

## COUNT I
**(Declaration of Invalidity and Order of Cancellation of U.S. Registration No. 7,489,071)**

20. Plaintiff incorporates by reference the allegations set forth above in this Complaint as if fully set forth herein.

21. This claim arises from an actual and justiciable controversy between the parties regarding whether the Tushbaby Trade Dress is valid and should be cancelled.

22. To resolve the legal and factual questions raised by Defendant and to afford relief from the uncertainty and controversy from which Defendant's accusations have precipitated, Plaintiff is entitled to declaratory judgment that the Tushbaby Trade Dress is invalid and should be cancelled.

23. In fact, the purported Tushbaby Trade Dress is not a "trademark" within the meaning of 15 U.S.C. § 1127. That is, the purported Tushbaby Trade Dress does not function as a source identifier for baby hip seat carrier products.

24. The purported Tushbaby Trade Dress depicted and described in the 071 Registration is not a "symbol" or a "device" used "on" or "in connection with" "goods" within the meaning of 15 U.S.C. § 1125(a)(1), but rather each consists of a feature of "goods" sold by Defendant.

**Generic**

25. The trademark laws do not protect generic trade dress. Product designs that are commonly used in an industry or marketplace cannot serve a trade dress indicator of source as they are generic.

26. The 071 Registration is registered for product design. The claimed features of the 071 Registration are commonly used in the baby carrier industry.

27. There are third parties who have used the claimed design of the 071 Registration before Plaintiff's sales of its products.

28. Several YouTube videos dated from 2015 to 2018, show that the baby carrier product sold by third-party has an identical design as the claimed design of the 071 Registration as below.



Screenshot of the video, https://www.youtube.com/watch?v=rKqe4MQWdCI

Screenshot of the video https://www.youtube.com/watch?v=dKPM2LXfmLY&t=44s

Screenshot of the video https://www.youtube.com/watch?v=kJwuXDgq5T8.



Screenshot of the video https://www.youtube.com/watch?v=sqiCTEzKKY4



Screenshot of the video https://www.youtube.com/watch?v=WXrGPwXDI3M



29. As shown in the Chart, the claimed design of the 071 Registration, the pocket and flap design, has been widely and extensively used by third party before Plaintiff came to the baby carrier market.

30. Thus, the 071 Registration is invalid and should be cancelled for generic.

**Lack of Secondary Meaning**

31. Product design trade dress could never be inherently distinctive and always required proof of secondary meaning. *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 212 (2000). The Tushbaby Trade Dress claims for a product design consists of a three-dimensional configuration of a pocket and a flap, must prove the secondary meaning.

32. "A mark acquires secondary meaning when it has been used so long and so exclusively by one company in association with its products . . . in that particular industry that the [mark] has come to mean that those products . . . are the company's trademark." *Box Acquisitions, LLC v. Box Packaging Prods., LLC*, 32 F. Supp. 3d 927, 935 (N.D. Ill. 2014).

33. Even Defendant has acquired a certificate of registration for the Tushbaby Tradre Dress, the documents submitted to the Patent and Trademark Office ("PTO") by Defendant are far from established the secondary meaning. Further, none of the documents shows the Defendant direct the potential consumer to look for the certain feature, which is the pocket and slap here, to know that it is from that source. Defendant also did not provide any consumer studies to the PTO to show the alleged Tushbaby Tradre Dress has acquired secondary meaning.

34. In another case initiated by Plaintiff against several competitors in United States District Court, Southern District of New York, Case No. 1:2024-cv-06150, *TushBaby, Inc. v. Jinjang Kangbersi Trade Co, Ltd. et al.*, ("New York Case") the defendant in that case submitted

9

a consumer survey to the Court. A true and correct copy of the consumer survey is attached hereto as Exhibit C.

35. The Survey found that only a net rate of 2.6% of the respondents associated the Tushbaby Trade Dress with a single source. *See* Exhibit C, p. 30. Further, a net 3.0% of respondents named Tushbaby as the one company they associate with the product, and a significant number of respondents named other baby supply manufacturers as the single company that they associate with the product. *Id*. It is clear that there is no secondary meaning in the Tushbaby Trade Dress.

36. Further, since the other party has already used the same design for the baby carrier products, Plaintiff has never exclusively used the claimed design of the Tushbaby Trade Dress.

37. Plaintiff alleged to the PTO that it expends $4 million annually on marketing and advertising its products. However, Plaintiff never demonstrated that its advertising expenditures were made to promote the Tushbaby Trade Dress. The brand-level marketing and advertising expenditures do not evince secondary meaning for the Tushbaby Trade Dress.

38. Plaintiff has also failed to show the unsolicited media coverage of its product to prove the secondary meaning. There is no evidence provided to the PTO showing that consumers connected the products depicted in the articles to Plaintiff's company.

39. Plaintiff's alleged sales success also fails to support the secondary meaning. Without any efforts to associate its Tushbaby Trade Dress with the source of the product rather than the product itself, the alleged sales success does not establish that a product's trade dress has acquired secondary meaning.

40. Moreover, since some other parties have sold the baby carrier products bearing the identical design of the Tushbaby Trade Dress, Plaintiff cannot show any attempt to plagiarize its Tushbaby Trade Dress.

41. Thus, the Tushbaby Tradre Dress is invalid for lacking secondary meaning and should be cancelled for lacking secondary meaning.

**Functionality**

42. It is well-recognized in the Seventh Circuit that an alleged trade dress is functional where "[a]ll of the claimed features are functional" and "none was added to produce a distinctive appearance that would help consumers identify the product's source." *Specialized Seating, Inc. v. Greenwich Indus.*, LP, 616 F.3d 722, 728 (7th Cir. 2010).

43. The defendant in the New York Case also submitted an expert report ("Mr. Mauro's Report") to prove the Tushbaby Trade Dress is functional. A true and correct copy of the expert report is attached hereto as Exhibit D.

44. Mr. Mauro's Report shows that the Tushbaby Trade Dress is dictated by ergonomic considerations derived from how the user interacts with the front pocket and flap based on the four use cases declared by Plaintiff when compared to research data from human factors science, ergonomics literature and formal functional analysis. *See* Exhibit D, p. 41. The front pocket and flap are designed for non-visual, purely ergonomic performance. *Id*.

45. These functional specifications are required for providing the a not hands-free baby carrier product with more storage space, and for this reason, these functional aspects also greatly affect the cost and quality of the products in question.

46. Plaintiff's advertisements also focus on the utilitarian advantages of the Tushbaby Trade Dress.

47. Thus, the Tushbaby Tradre Dress is invalid for functional and should be cancelled.

48. Plaintiff suffered and continues to suffer significant damages in its business by Defendant's infringement complaint sent to Amazon.

49. An actual controversy exists between Plaintiff and Defendant regarding whether the Tushbaby Tradre Dress, is protectable as a trademark under the Lanham Act or under common law.

50. Plaintiff is entitled to a declaration judgment that the Tushbaby Tradre Dress is invalid under Lanham Act and common law, and an order of cancellation of the Tushbaby Tradre Dress, for reason of any one of the above reasons as outlined by the Lanham Act. Plaintiff is also entitled to damages in an amount to be proven at trial.

## COUNT II
**(Declaration of Non-infringement of U.S. Registration No. 7,489,071)**

51. Plaintiff incorporates by reference the allegations set forth above in this Complaint as if fully set forth herein.

52. This claim arises from an actual and justiciable controversy between the parties regarding whether Plaintiff's selling of its Accused Product infringes on the Tushbaby Trade Dress.

53. To resolve the legal and factual questions raised by Defendant and to afford relief from the uncertainty and controversy from which Defendant's accusations have precipitated, Plaintiff is entitled to declaratory judgment that it does not infringe the Tushbaby Trade Dress.

54. As mentioned above, the Tushbaby Trade Dress does not obtain any secondary meaning, and the claimed design of the Tushbaby Trade Dress is commonly used in the market. Thus, the Tushbaby Trade Dress is weak.

55. Plaintiff's Baby Hip Seat Carrier Products and the Tushbaby Trade Dress are completely different. First, the product label on the Plaintiff's Baby Hip Seat Carrier Product is

located on the pocket, unlike the Tushbaby Trade Dress, which is on the flap, and Plaintiff displays its own distinguished trademark on its products. The contours of Plaintiff's Baby Hip Seat Carrier Products are also different: the front pocket of Plaintiff's Baby Hip Seat Carrier Products has a completely flat arch at the bottom, while the flap of the Tushbaby Trade Dress is noticeably wider than the pocket below, and the bottom of the pocket also has a distinct curve. Additionally, the Accused Product features an arched zipper outlining the pocket, whereas the Tushbaby Trade Dress does not include a zipper.



56. Since Plaintiff has marked its trademark in the most prominent position on the product, no customer would confuse the Accused Product with the Defendants.

57. Further, Plaintiff did not act in bad faith by utilizing a commonly used design and prominently displaying its trademark on the product.

58. Moreover, the baby carrier products are baby products specifically designed for parents. As the potential customers of the Accused Products, parents typically pay much more attention to the details when purchasing items for their babies. Thus, the potential customers are unlikely to be confused the Accused Product with the Defendants.

59. Thus, there cannot be any likelihood of confusion between the Accused Product and the Tushbaby Trade Dress.

60. Therefore, Plaintiff seeks a declaratory judgment from this Court that Plaintiff has not infringed the Tushbaby Trade Dress, or otherwise create any likelihood of confusion under the Lanham Act, 15 U.S.C. §§ 1114-1118 and 1125 and at common law. Plaintiff is also entitled to damages in an amount to be proven at trial.

## COUNT III
### (Tortious Interference with Contractual Relations)

61. Plaintiff incorporates by reference the allegations set forth above in this Complaint as if fully set forth herein.

62. The elements of a claim for tortious interference with contract are: (1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the third-party's breach of the contract without justification; (4) the defendant's wrongful conduct caused the third party to breach of the contract; and (5) damages resulting therefrom.

63. Plaintiff has a valid and existing contract with Amazon in order to sell its products through Amazon.com.

64. Defendant clearly knew of Plaintiff's contractual relationships with Amazon, so its sent an infringement report to Amazon against Plaintiff.

65. Defendant intentionally interfered with those contractual relationships and furthermore knowingly and intentionally, by ways of asserting materially false allegations of trade dress infringement against Plaintiff in order to have Plaintiff's listing removed and eliminate Plaintiffs' lawful competition.

66. As a result of Defendant's improper acts, Plaintiff's listings were removed from Amazon.

67. Plaintiff has suffered direct, proximate and foreseeable damages and continues to suffer direct, proximate and foreseeable damages.

68. By reason of Defendant's acts, Plaintiff is entitled to equitable remedies and damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

A. Declaring that the importation, manufacturing, marketing, distribution, sale, and/or any other form of commercial use of the Baby Hip Seat Carrier Products do not infringe the Tushbaby Tradre Dress U.S. Registration No. 7,489,071;

B. Declaring that the Tushbaby Tradre Dress U.S. Registration No. 7,489,071, is invalid;

C. Ordering cancellation of the U.S. Registration No. 7,489,071;

D. Awarding Plaintiff recovers its costs and reasonable attorneys' fees incurred in this action from Defendant;

E. Awarding Plaintiff damages due to Defendants' improper acts, doubled and/or trebled due to the willful and exceptional nature of the case;

F. Awarding pre- and post- judgment interest; and

G. Awarding Plaintiff such other and further relief as this Court deems is just and proper.

## Jury Trial Demand

Plaintiff hereby demands a jury trial on all issues so triable.

Date: December 20, 2024          /s/ Wei Wang
                                 Wei Wang, Esq.
                                 GLACIER LAW LLP

41 Madison Avenue, Suite 2529
New York, NY 10010
wei.wang@glacier.law
212-729-5073

Tao Liu, Esq.
GLACIER LAW LLP
41 Madison Avenue, Suite 2529
New York, NY 10010
Tao.liu@glacier.law
***Attorney for Plaintiff***